FILTROL CORPORATION *et al. v.* HUGHES.

(In Banc. Nov. 26, 1945.)

[23 So. (2d) 891. No. 35964.]

Flowers, Brown & Hester, and Robert Burns, all of Jackson, for appellants.

12

R. C. Russell, of Magee, and **O. O. Weathersby**, of Taylorsville, for appellee.

14

Argued orally by **Robert Burns**, for appellant, and by **R. C. Russell**, for appellee.

**Sydney Smith, C. J.**, delivered the opinion of the Court.

The appellee and one of appellants are adjoining landowners. The level of the appellant's land is higher than that of the appellee and in its natural state surface water flowed therefrom onto appellee's land into a natural drain thereon, which carried it to Strong River, a natural water-

course. The clay under the surface of the appellant's land contains bentonite, a mineral suitable for several commercial purposes. The owner of this land and the two other appellants are engaged in removing clay containing this bentonite from the land. In doing this they removed the top soil or over-burden and piled it along the excavation on the side thereof toward the appellee's land. The excavation caused by the removal of this clay was one-quarter of a mile long and a quarter of a mile wide, the depth of which does not certainly appear. The result was that the rain water falling on, and the surface water flowing into, this excavation, without which it would have flowed in a diffused state onto the appellee's land, was collected in the excavation. In order to remove this water therefrom the appellants dug a ditch sufficient therefor opposite and a short distance from the appellee's land which resulted in this collected water being discharged in a body onto the appellee's land. This water after passing through the excavation collected clay therefrom, which was deposited by it "over not less than forty acres" of the appellee's land in such quantity and of such character as according to the evidence for the appellee to destroy it "for any purpose and it is now a total loss to" the appellee.

The appellants requested and were refused a directed verdict in their favor. In support of this they say that the evidence discloses that they mined this bentonite in the usual way, were guilty of no negligence in so doing, that the removal of this water from this excavation was necessary in order to continue removing the clay containing the bentonite therefrom, and that the way in which they removed it was the only practical way to do so; because of which they say that the appellee's damage, if any, resulted from no fault of theirs but was incidental to the reasonable use by them of their land.

The appellants, of course, have the right to make any reasonable use of their land—to remove the bentonite therefrom—without liability to the appellee for any un-

avoidable injury caused him as an incident thereto, but they are without the right in so doing to cause surface water to be collected and discharged in a body on appellee's land so as to affect it differently from what it had theretofore to the appellee's injury. 3 Farnham on Waters, Sec. 887; Gould on Waters (3 Ed.), Sec. 271; Steed v. Kimbrough et al., 197 Miss. 430, 19 So. (2d) 925; Kansas City, M. & B. R. Co. v. Lackey, 72 Miss. 881, 16 So. 909, 48 Am. St. Rep. 589; Illinois C. R. R. Co. v. Miller, 68 Miss. 760, 10 So. 61. No error was committed in refusing the appellants' request for a directed verdict, and the verdict of the jury, as to liability, is not against the weight of the evidence as the appellants say, but is fully sustained thereby, as to which, as the facts hereinbefore set out, there is no material conflict.

The appellants, in support of their claim that this land was ordinary cut-over land and of little value, offered, but were not permitted to introduce several photographs of portions of the land taken from elevations sufficient for that purpose showing the land within the scope of the camera to be without timber and thickly covered with briars and bushes. A witness familiar with the land, and who was present when these photographs were taken, stated that they correctly portrayed the land photographed and that the remainder of the land claimed by the appellee to be destroyed was in a similar condition as to timber, bushes, and briars. Assuming for the purpose of the argument that the exclusion of these photographs from the evidence was erroneous, no harm was done the appellants thereby for the reason that the evidence not only of the appellants but also of the appellee abundantly disclosed that the timber had been cut from the land and that it was covered with bushes and briars.

The jury awarded the appellee damages in the sum of $1,000, $25 per acre for 40 acres, the number of acres which the appellee claimed had been destroyed. This the appellants say is far in excess of what should have been awarded the appellee. In this we concur. The ap-

pellee purchased the land several years ago, paying therefor something less than $5 an acre. According to his evidence when it was destroyed by the appellants' causing it to be flooded with muddy water, it was worth $50 an acre. How it could have possibly increased so much in value, or even to $25 an acre, does not appear from the appellee's evidence; and according to the evidence for the appellants, the land denuded of timber and with no indication that it contained any minerals was not worth over $3 an acre. The only difference between this and the adjacent land is that it had a spring on it, which was destroyed by the mud, from which cattle had theretofore obtained water. On this evidence a verdict of $25 an acre should not be permitted to stand. Consequently, the judgment of the court below will be affirmed as to liability but reversed insofar as it fixes the amount of damages to be awarded, and the cause will be remanded to the court below for trial on the issue of the amount of damages only.

So ordered.