NEWTON COCA COLA BOTTLING CO. *v.* MURPHREY.

Division A. Dec. 17, 1951.

No. 38084 (55 So. (2d) 485)

824

**A. B. Amis, Jr.,** for appellant.

O. B. Triplett, Jr., for appellee.

**Kyle, J.**

This is an appeal by the Newton Coca Cola Bottling Company, a corporation, defendant in the Court below, from a decree of the Chancery Court of Newton County in favor of Edward Ray Murphrey, complainant in the court below, awarding damages to the complainant for the wrongful diversion of surface waters onto the land owned by the complainant, and enjoining the defendant from discharging excess surface waters from its own land upon the land of complainant.

The appellee, Edward Ray Murphrey, was the owner of a tract of land in the Town of Newton fronting southwardly on U. S. Highway No. 80 and having a width or frontage on said highway of 210 feet. The appellee acquired title to the property in 1943, and during the year 1946 the appellee constructed on the southwest corner of his lot a small building to be used as a floral shop and thereafter operated a floral shop business therein. The appellee's dwelling house was located on a part of the lot lying east of his floral shop. At the time the appellee constructed his floral shop building in 1946, the land lying immediately west of his lot and fronting on U. S. Highway No. 80 was a hilly unimproved tract of land, a small part of which lying along-side the highway right-of-way had been graded down by the State Highway Department to a level that corresponded roughly with the level of the highway as a part of a beautification project. To the north of the graded strip of land was a hill which shed its water in a diffused state in all directions except toward the south.

In January, 1948, the appellant purchased the tract of land lying immediately west of the lot on which the appellee's floral shop building was located. The lot acquired by the appellant fronted on the highway for a distance of 328 feet and extended northwardly approximately 315 feet. After purchasing its lot the appellant made arrangements to have the lot properly graded and terraced and made ready for use as a building site. The appellant cut away the hill on said lot and leveled the ground in preparation for the construction of a combination warehouse and garage and a bottling plant building. As a result of the grading of the lot the surface water falling on the lot was caused to flow southwardly and southeastwardly toward the highway and onto the land owned by the appellee; and there was abundant proof to show that after the grading of its lot by the appellant the lot on which the appellee's floral shop was located was inundated at times by the surface waters flowing southwardly and eastwardly off of appellant's lot and along the north side of the highway right-of-way onto appellee's lot, and deposits of sand were left in the yard and on the walk in front of the floral shop.

During the month of October, 1948, the appellant sent its workmen back and made substantial changes in the slopes on its own lot so as to drain the water falling on the north part of the lot back northwardly and thereby reduce the amount of surface water that would flow onto and across the appellee's lot. And sometime thereafter the appellant cut a ditch from the southwest corner of its garage building to a point near the southwest corner of the appellant's lot, so as to reduce further the flow of surface water southwardly and southeastwardly toward appellee's property.

The appellant claimed that the amount of surface water that flowed upon the appellee's lot after the above mentioned grading and terracing had been completed was no

greater than it had been prior to the time when the appellant purchased its property.

The chancellor, after hearing the testimony of the witnesses, made a detailed finding of facts which was made a part of the record. The chancellor found that U. S. Highway No. 80, as it runs westwardly from Newton, runs up hill from the appellee's property for a distance of several hundred yards, and that considerable quantities of water in times of heavy rainfall come down the highway from the top of a hill that is situated well beyond the western boundary line of the bottling company's property, and that some of the water running down the highway passes along the south side of the bottling company's lot and finds its way onto Murphrey's lot. The chancellor found that the water falling on the southeast part of the bottling company's lot flowed southwardly toward the south boundary line of the bottling company's property and became commingled with the water coming down the north side of the highway right-of-way and that all of said water being thus collected along the south line of the bottling company's property entered Murphrey's lot in a concentrated flow at one point near the southwest corner of Murphrey's floral shop lot.

The chancellor accepted the estimate of the county surveyor, who testified as a witness for the defendant, that at the time of the trial the surface waters from an area of approximately 20,000 square feet of the bottling company's lot drained onto Murphrey's lot. The chancellor stated that there was no reliable testimony in the record to show the exact area in square feet of the bottling company's lot that drained onto Murphrey's lot before the grading was done. There was a decided conflict in the testimony as to the width of the strip of land along the south side of the bottling company's lot that had been graded by the State Highway Department as a part of the beautification project before the bottling company acquired title to the property; and there was also a considerable amount of uncertainty in the testi-

mony of the witnesses as to whether all of the water falling on the beautification area was accustomed to flow eastwardly onto the Murphrey lot, or whether only a part of the water falling on the beautification area drained eastwardly and the remaining part westwardly. But the chancellor found that Murphrey suffered no damage from the water running off of the bottling company's lot until after the bottling company had graded the lot, and that as a result of the grading of the bottling company's lot the appellee had been damaged by the concentrated flow of the water falling on the southeast portion of the bottling company's lot onto Murphrey's lot at the southwest corner of Murphrey's lot.

The chancellor found that the bottling company had expended considerable sums of money in installing gutters and manholes, and ditches to take care of the surface waters running off of the bottling company's lot, and that the bottling company was not liable for punitive damages. But the chancellor found that there were some corrections that could be made by the bottling company, and that an injunction should be issued requiring the bottling company to make the necessary corrections. The chancellor did not state specifically what corrections should be made, and the nature of the corrections which he had in mind can be judged only by the terms of the decree.

The chancellor entered a decree awarding damages to the complainant in the sum of $200.00 for the injury to the complainant's property caused by the wrongful diversion of the surface waters from the defendant's lot onto the complainant's lot, and restraining and enjoining the defendant from thereafter discharging upon the land of the complainant excess surface waters from its own land. And the chancellor allowed the defendant 120 days for taking such action as might be necessary to take care of such excess surface waters so as to prevent their future flow upon the land of the complainant. From that decree

the defendant has prosecuted this appeal, and the complainant has filed a cross-assignment of errors.

The appellant's attorney in his assignment of errors and in his brief attacks the chancellor's findings of facts and contends that the chancellor erred in awarding to the appellee damages in the sum of $200.00 and in rendering a decree restraining and enjoining the appellant from discharging excess surface waters from its own land upon the land of the appellee. We have made a careful study of the entire record, including the testimony of all of the witnesses who testified for either of the parties, and we find no error that would justify us in reversing or attempting to modify the decree of the chancellor. The evidence presented on the trial of the case before the chancellor was conflicting, and it is well settled by the decisions of this Court that where the evidence is conflicting the findings of the chancellor will not be disturbed on appeal, since he is better able to determine the truth of the matter than the appellate court. Mississippi Chancery Practice, Griffith, Second Edition 1950, par. 674, and cases therein cited.

The principles of law relating to the right of a landowner to discharge surface water onto the lands of another are summarized in 56 Am. Jur. p. 555, as follows: ''The servitude which the owner of the higher adjoining land has upon the lower land for the discharge of surface water naturally flowing on the lower land from the dominant estate ordinarily extends only to surface water arising from natural causes, such as rain and snow, and cannot be augmented or made more burdensome by the acts or industry of man, and it is the generally recognized rule, both of the civil and the common law, subject to certain qualifications and exceptions hereinafter noted, that a landowner cannot collect surface water into an artificial channel or volume, or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter. This is true although no more water is collected than would

naturally have flowed upon the property in a diffused condition.''

In the case of Kansas City, Memphis & Birmingham R. R. Co. v. Lackey, 72 Miss. 881, 16 So. 909, 48 Am. St. Rep. 589, this Court said that one may not collect surface water and discharge it injuriously upon the land of another. In the case of Illinois Central R. R. Co. v. Miller, 68 Miss. 760, 10 So. 61, this Court held that one is liable in damages who collects in artificial channels surface water falling upon his own land or that of others, and discharges it in undue and unnatural quantities upon the land of another, and that where the roadbed of a railroad diverts water, either in streams having channels and banks or mere surface water, and causes it in undue quantities to overflow the land of another the company is liable in damages therefor.

In the case of Filtrol Corporation et al. v. Hughes, 199 Miss. 10, 23 So. (2d) 891, 892, the Court said: ''The appellants, of course, have the right to make any reasonable use of their land—to remove the bentonite therefrom—without liability to the appellee for any unavoidable injury caused him as an incident thereto, but they are without the right in so doing to cause surface water to be collected and discharged in a body on appellee's land so as to affect it differently from what it had theretofore to the appellee's injury.''

And in the case of Steed v. Kimbrough et al., 197 Miss. 430, 19 So. (2d) 925, 926, the Court said:

''The owner of the upper land does not have the right to collect his surface waters into an artificial channel or channels and then discharge it or allow it to be discharged upon the lower land at a greater volume or in a more concentrated flow than would have resulted had the natural conditions been left undisturbed, from which it follows that when by alterations made by the upper owner in natural conditions the result would be to cast upon the lower owner the water in a greater volume or in a more concentrated flow, the upper owner by means of

his own * * * land must take care of the excess, or must do so in cooperation with the lower owner.''

We think that there was substantial evidence to show that the appellant in grading its lot had caused the surface water from the southeast portion of its lot to be concentrated in an artificial manner along the south line of its property and to be discharged upon the land of the appellee at a point near the southwest corner of appellee's lot in a more concentrated flow than would have resulted had the natural conditions been left undisturbed. The changes made by the appellant in the second grading of the lot in October, 1948, when the slope along the north side of the lot was changed so as to cause the surface waters in that area to flow northward, and the digging of a ditch from the southwest corner of the appellant's building to a point near the southwest corner of appellant's lot eliminated the flow of surface waters in large quantities from the land of the appellant onto the land of the appellee; and from our understanding of the record, appellant can, without undue hardship, comply with the injunction requirements of the decree of the lower court. The chancellor was amply justified in awarding to the appellee the sum of $200.00 as damages for the injury suffered by the appellee prior to the filing of the bill of complaint.

The appellee in his cross-assignment of errors contends that the amount of damages awarded to him is inadequate, and that the court should have allowed him the full sum of $1,339.00, which was the amount of the estimated cost of the repairs that were needed on the floral shop building at the time of the trial. But this contention is not justified by the facts disclosed by the record. The chancellor found that the deterioration and decay in the foundation of the floral shop building, which were testified to by the appellant, were not caused by the flow of water from the appellant's lot onto the floral shop lot. The chancellor found that the deterioration and decay in the foundation of the floral shop building were due main-

ly to the faulty construction of the building, to the failure of the appellee to provide a sufficient number of piers to support the foundation timbers properly, and to the failure of the appellee to provide sills of sufficient size to support the weight imposed upon them after the appellee had installed a refrigerator to be used in connection with his floral shop business.

We find no reversible error in the record and the decree of the chancellor is affirmed, both on direct appeal and on cross-appeal.

Affirmed on direct appeal and on cross-appeal.