360 So.2d 700 (1978)
WARRIOR, INC.
v.
Clay E. EASTERLY and Mary A. Easterly.
No. 50304.
Supreme Court of Mississippi.
July 12, 1978.
Martin & Taylor, Ernest G. Martin, Jr., Roberts, Young, Stelly & Rosetti, Herbert J. Stelly, Sr., Gulfport, for appellant.
Cecil G. Johnson, Biloxi, for appellees.
Before PATTERSON, WALKER and COFER, JJ.
*701 PATTERSON, Chief Justice, for the Court.
This is a water drainage suit appealed from a decree of the Chancery Court of the Second Judicial District of Harrison County which granted a mandatory injunction requiring appellant Warrior, Inc. to restore the property of appellees, Dr. Clay E. Easterly and his wife, Mary A. Easterly, to its original status and to provide adequate drainage of its property.
In 1955, Dr. and Mrs. Easterly purchased approximately fifteen acres in Harrison County on which they resided. On this land lay a pond which was fed primarily by rain and excess water from an artesian well. *702 Any overflow from the pond moved southwesterly off the Easterly property through a culvert beneath Moye Road and into the Back Bay of Biloxi.
In 1973, Warrior, Inc. purchased twenty-three acres lying to the north of and adjacent to the Easterlys' land and developed upon it a subdivision known as Magnolia Estates. This property contained a definable ridge of elevation such that water drained across Magnolia Estates and onto the Easterly property in a southwesterly direction and eventually into the pond. At the time of purchase there existed a ditch running easterly along the northern boundary of the Warrior property and in the northeast corner of the tract it connected with another ditch which ran southerly into what was termed a branch by Ira O. Herrington, Jr., President of Warrior, Inc. Along the southern border of Magnolia Estates he constructed a culvert under a street and cut a ditch which ran in an easterly direction joining this branch or depression. The contour of the subdivision was such that the surface water drained down the streets, into this ditch, and eventually into the depression. The water then flowed southerly into the Easterlys' pond. Warrior improved this depression by removing tree stumps, limbs, and debris and constructing smooth sides which resulted in an accelerated flow of water.
It was not until construction had begun on Magnolia Estates that Dr. Easterly's pond began filling with sand and trash. Trash and debris also obstructed the drain beneath Moye Road, and excess water from the pond flooded part of his other property.
Dr. Easterly and Herrington agreed the pond would be cleaned after the subdivision was completed. Although Herrington offered to remove the sand with a tractor and front end loader, Dr. Easterly suggested the use of his son's dragline which Herrington declined as he thought the son's offer for the job was excessive. Dr. Easterly then alleviated the situation on his own by having the pond excavated with the dragline.
Warrior filed suit against the Easterlys alleging that the widening and deepening of the pond on their property slowed the water flow causing it to back onto the subdivision. It sought removal of the impediment and damages because of alleged depreciation in property values and the continuous maintenance cost incurred for cleanup of the streets. The Easterlys filed a cross bill praying for damages to their property because of the water from the subdivision. The trial court dismissed the complaint with prejudice and sustained the cross bill, granting an injunction but awarding no damages. From the trial court's decision, Warrior cites as error that:
1. The decision of the lower court was contrary to the overwhelming weight of the evidence,
2. The lower court erred in dismissing the bill of complaint, and
3. The lower court erred in granting a mandatory injunction.
The Easterlys cross appeal contending the trial court erred in its failure to award monetary relief for damages sustained to their property.
As to whether the decision was contrary to the overwhelming weight of the evidence, we must agree with the trial court's finding that this case involves surface waters and not natural water courses because there is ample testimony to support this conclusion. The law as regards these types of cases appears to be settled. An upper riparian owner may reasonably drain his surface waters into a water course but cannot collect surface waters and discharge them in a body upon adjoining owners. Board of Drainage Commissioners v. Board of Drainage Commissioners, 130 Miss. 764, 95 So. 75 (1923). Moreover, an upper riparian owner has no right to collect surface water in an artificial channel and discharge it or allow it to be discharged upon the lower land at a greater volume or in a more concentrated flow than would have resulted if the natural condition had remained undisturbed. It follows that when an upper owner alters the natural conditions so as to cast upon the lower owner a greater volume or a more concentrated flow of water, the *703 upper owner must take care of the excess by his own means and on his own land or must do so in cooperation with the lower owner. Newton Coca Cola Bottling Co. v. Murphrey, 212 Miss. 823, 55 So.2d 485 (1951); Steed v. Kimbrough, 197 Miss. 430, 19 So.2d 925 (1944).
We are of the opinion there was insufficient evidence to prove the existence of a natural water course flowing from Magnolia Estates to the Easterlys' pond. Rather, we are of the opinion, as was the trial court, that the appellant collected its surface water in an artificial channel and discharged it in a concentrated flow onto the Easterly property.
A somewhat similar situation arose in the case of Steed v. Kimbrough, 197 Miss. 430, 19 So.2d 925 (1944), in which appellant cut a ditch or ditches through his upper land which emptied into a ditch previously dug by appellees without enlarging appellees' ditch. The result was to accelerate the flow from the upper land and to cast the water in a concentrated form onto appellees' land. There this Court termed the problem as one of surface waters and not of a natural water course, and stated:
Most of the adjoining lands of the parties are located in a swale or depression... . The depression does not have a sufficient slope to be termed a hollow, and its fall is not enough to have produced the formation of any natural watercourse with well defined banks, or any banks at all; but the fall is sufficient to cause the rain water to pursue, in a diffused state, a downward course ... upon the lower land of appellees ... In brief, the lay of the land is such that the rainwater falling upon appellant's slightly higher land on the west would in its diffused state reach appellees' slightly lower land to the east, and would in its natural state proceed, still in a diffused state, to the eastward over appellees' lower land. (197 Miss. at 434, 435, 19 So.2d at 925, 926).
We are also not persuaded by Haisch v. Southaven Land Company, Inc., 274 F. Supp. 392 (N.D.Miss. 1967), cited by appellant in which a land developer straightened and improved streams increasing the flow of water onto the lower riparian owners' lands. In that case, there was no apparent question as to the character of the drainage area as there existed three separate streams which converged into a single stream on the Haisch property.
Appellant's second contention is that the trial court erred in dismissing its bill of complaint seeking damages. As the record discloses insufficient proof of damages to Warrior, we are of the opinion this assignment of error has no merit.
Lastly, appellant complains that the trial court erred in granting a mandatory injunction. With this we must agree. A mandatory injunction should not issue unless the right thereto is shown beyond reasonable doubt, and irreparable injury would result unless issued. Pattillo v. Bridges, 247 So.2d 811 (Miss. 1971); Homes, Inc. v. Anderson, 235 So.2d 680 (Miss. 1970); Mississippi State Highway Comm'n v. Spencer, 233 Miss. 155, 101 So.2d 499 (1958); Thomas v. Mississippi Power and Light Co., 170 Miss. 811, 152 So. 269 (1934).
In Spencer, supra, we stated as follows:
A mandatory injunction is an extraordinary remedial process. Courts are more reluctant to grant a mandatory injunction than a prohibitory one. 43 C.J.S., Injunctions, § 5. Although equity has jurisdiction to issue them, they should be confined to cases where it is the only remedy which will be effectual. 43 C.J.S., Injunctions, § 5 states: "Even if the right is clear, it does not follow that a mandatory injunction must be granted, and such injunctions will be issued only in cases of extreme necessity, where the right invaded is material and substantial, and where adequate redress at law is not afforded. Mandatory injunctions will never be granted unless extreme or very serious damage at least will ensue from withholding that relief; nor will they be issued in doubtful cases... ." (233 Miss. at 176, 101 So.2d at 506)
*704 In this case, the trial court granted the mandatory injunction apparently under the general prayer for relief as the appellees sought only a monetary award. We are of the opinion that the proof was insufficient to warrant such extraordinary relief as we think it was not the only effective remedy nor was the case one of irreparable injury. Further, we are not persuaded by the argument on cross-appeal that monetary damages should be awarded in addition to injunctive relief but rather conclude that a monetary award is a sufficient remedy in this cause.
Therefore, we reverse the trial court in its issuance of a mandatory injunction, uphold the liability of appellant, and remand the cause for hearing upon damages to the property of cross appellants.
REVERSED AND REMANDED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.