372 So.2d 1277 (1979)
George W. PAYNE et ux
v.
R.L. TOUCHSTONE et ux.
No. 51354.
Supreme Court of Mississippi.
July 18, 1979.
Rehearing Denied August 1, 1979.
*1278 Harry P. Hewes, Gulfport, for appellants.
Jason H. Floyd, Gulfport, for appellees.
Before ROBERTSON, P.J., and SUGG and LEE, JJ.
LEE, Justice, for the Court:
George W. Payne and Hilda Kay Payne, his wife, filed suit in the Chancery Court of the First Judicial District of Harrison County, Honorable Frank W. Alexander, presiding, against R.L. Touchstone and Mattie E. Barnett Touchstone, husband and wife, seeking (1) a mandatory injunction to enjoin the obstruction of the natural flow of water from the Paynes' property onto the Touchstones' property, and to require removal of a wall or barrier placed along the property line between the parties by the Touchstones, and (2) actual and punitive damages, and other relief. The chancellor sustained a motion to strike averments of the complainants' bill relating to actual and punitive damages, denied all other relief sought in the bill of complaint, and dismissed same with prejudice at the cost of the Paynes.
The appellants, Paynes, first contend that the chancellor erred in declining to grant injunctive relief to them requiring the appellees, Touchstones, to remove a fill and retaining wall placed by them along the property line between the parties and in declining to restrain the appellees from further obstructing the natural flow of surface rainwater.
The parties own and occupy residential property adjacent to each other, the appellants owning Lot 1, Block 3, of Singwood Subdivision, and appellees owning Lot 2 thereof. Appellants' property is north of appellees and is the upper lot. The boundary line between the parties runs in a general northwesterly-southeasterly direction. Prior to June, 1977, appellees began filling in with dirt along their property opposite appellants to divert and fend off surface water from the Payne property. Around that date, the Paynes installed gutters on their house, four (4) of which faced away from the Touchstone property while two (2) discharged water towards the Payne-Touchstone boundary. After installation of the gutters, appellees began the construction of a block wall along the property line from two (2) to three (3) feet high which effectively caused water to back up and pool on the Payne property during and after rains.
Appellants contend that prior to the erection of the wall and fill by appellees, their property drained and dried out after rains without any problems, and that, when the wall was constructed, appellants' backyard filled with water, remained boggy and emitted an odor for long periods. The evidence indicates that prior to installation of the gutters on appellants' house, water had *1279 run into the appellees' carport on at least one occasion after rains, and that no greater amount of water was caused to flow toward and across the appellees' property after installation of the gutters than prior thereto. Also, the water discharged from the gutters was diffused, or spread out, and by the time it reached the Touchstone property, was flowing in its natural state.
The rule is recognized in Mississippi that the owner of unimproved upper lands has the right to let diffused surface waters on his land flow in an unimpeded natural state onto the lands of the lower adjacent owner. However, the owner of such upper lands does not have the right to collect and discharge water on the lower owner, even though it is in no greater capacity than that which naturally flows from his property. Steed v. Kimbrough, 197 Miss. 430, 19 So.2d 925 (1945). The upper landowner, likewise, cannot by artificial means discharge such water in increased quantities which would make the waters more burdensome on the lower landowner. Newton Coca-Cola v. Murphy, 212 Miss. 823, 55 So.2d 485 (1951).
In Holman v. Richardson, 115 Miss. 169, 76 So. 136 (1917), the parties resided upon adjacent lots, the complainant's lot being the upper or higher lot. A hollow or depression in the lot, not being a well-defined channel, carried a great deal of water between the lots after rains to a ditch across the defendant's lot, thence to a public drain along a street. There were underground drains on the property of the complainant which caused the flow of water to move faster from said property to the beginning of the ditch across the defendant's lot, but the drains did not carry more surface water than would ordinarily pass upon the defendant's land. The defendant erected a brick wall to stop and turn back the flow of water onto the complainant's lot, an injunction was issued by the chancery court prohibiting the defendant from so doing, and, on appeal, this Court said:
"[W]hen adjoining lots owned by different persons are on a different level, so that there will be a natural flow of rainwater in a diffused state from the higher to the lower level, the owner of the lower lot may fend water therefrom, provided he does so for proper objects and exercises reasonable care to prevent unnecessary injury to the higher lot... .
... [W]here two methods of disposing of such water are available to the owner of the lower lot, .. . one of which will damage the adjoining property and the other will not, the latter must be adopted by the owner of the lower lot in fending the water therefrom." 115 Miss. at 179, 76 So. at 137.
One party must so use his own property as not to unnecessarily injure the property of others. In Homes, Inc. v. Anderson, 235 So.2d 680 (Miss. 1970), there was involved the natural flow of surface water and the Court entered a mandatory injunction ordering the owner of the upper land to install drains and build a wall to prevent the natural flow of water from passing over the lands of the lower owner. Homes, Inc. cleared its lands west of Anderson for development and removed trees and undergrowth from same, which had prior thereto reduced the speed with which the runoff surface water reached Anderson's property through a natural drain or watercourse. The runoff, after clearing, moved silt and dirt into Anderson's pond. The evidence reflected that drains installed by Homes, Inc. had the same fall, followed the same natural watercourse, and delivered that water as before. The Court said:
"In Lauck v. Gilbert, 252 Miss. 371, 173 So.2d 626 (1965) the Court quoted with approval a statement appearing in 93 C.J.S. Waters § 114a(4) (1956).
The upper owner of land has the right, without interference to have the flow of the surface water follow along a well-defined watercourse from his land. Where surface water has been accustomed to gather and flow along a well-defined channel, which by frequent running it has worn into the soil, it has been held that it may not be obstructed to the injury of the dominant proprietor, but the upper owner *1280 cannot prevent interference with the drainage of surface water unless the servitude be clearly and permanently impressed on the property. Where a ditch is constructed across the lands of two adjacent proprietors in accordance with the natural flow of water, neither can disregard the rights of the other by changing the course of such water.
This is not a case of gathering into an artificial channel rain or surface water which had previously dispersed over the land and by that means discharging it in an artificial manner upon the lands of another.
The evidence in the record compels the conclusion that the clearing of the land and the installation of the drain in no way changed the course of the natural channel into which such surface waters previously had flowed and had been carried into the pond. It cannot be disputed that these things caused appellants' land to be drained more efficiently and thus the flow was accelerated.
* * * * * *
To sustain this injunction would deprive appellant of the right reasonably to improve and use its property for a legitimate purpose and would impose an oppressive expense and hardship not justified by any circumstances in evidence.
Moreover, adequate provision for carrying off the water coming into the pond from all sources, even in the case of excessive rainfall, obviously requires no more than the installation of a drain or spillway of a somewhat larger capacity than the one in place when the levee was damaged. To require the owner of higher lands to retain upon such lands all of the water coming onto them and to allow none of it to escape and flow onto the lands of his neighbor onto which they always had naturally flowed theretofore is to require a practical impossibility. Moreover, such a course would impose an intolerable burden upon the owners of the upper lands in every watershed." 235 So.2d at 682, 683.
The appellees argue that installation of two gutters pointed toward their property collected and discharged roof water upon it. However, the evidence does not reflect the roof area drained by the gutters and there is indication that by the time such waters reach the property line they are again flowing in a diffused state. An upper landowner may increase the flow of water in a reasonable exercise of his right of drainage in the development of his property, even if it results in drainage exceeding the capacity of the natural watercourse. Shattles v. Field, Brackett and Pitts, 261 So.2d 795 (Miss. 1972).
The topographical survey introduced in evidence reflects that the elevation along the property line at the southeast area varies from 25:88 feet ground elevation to 23:95 ground elevation near the center of the boundary line to 24:49 past the center mark to 26:07 at the northwest area of the said boundary. It is significant that the survey shows a higher elevation toward the northwest area of the boundary line which joins the public street and indicates that the natural flow is across the property of appellees. It further indicates that the higher elevation at the northwest area would prevent the water flowing to the street, probably even with a ditch.
We are of the opinion that the chancellor was manifestly wrong in denying the injunctive relief sought as to the flow of surface water from appellants' property onto the property of appellees, resulting from the wall and fill. The judgment of the trial court is reversed and judgment for such injunctive relief is entered here. However, the cause is remanded to the chancery court for further consideration as to the manner in which the injunction shall be issued for the purpose of permitting the surface waters to flow from the property of appellants to and over that of appellees and for the purpose of assessing or fixing among the parties any expenses of accomplishing such result.
Appellants further complain that the chancellor erred in striking that part of the bill of complaint averring claims for actual *1281 and punitive damages, and in declining to grant injunctive relief against appellees in using outbuildings and storerooms on their property for commercial uses in violation of certain protective covenants and in declining to grant relief against appellees for trespass, threats and similar matters averred in the bill of complaint. We have carefully examined assignments relating to those contentions, and find them to be without merit, and that the judgment of the trial court should be affirmed as to same.
AFFIRMED IN PART, REVERSED AND JUDGMENT ENTERED HERE IN PART, AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.