## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01791-SCT

*BRADIE REID, A MINOR, BY AND THROUGH HIS FATHER AND LEGAL GUARDIAN, BRADLEY REID*

*v.*

*AMERICAN PREMIER INSURANCE COMPANY AND ROSS-KING-WALKER, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2000 |
| TRIAL JUDGE: | HON. MICHAEL R. EUBANKS |
| COURT FROM WHICH APPEALED: | LAWRENCE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WOODROW W. PRINGLE, III |
| ATTORNEYS FOR APPELLEES: | JAMES L. QUINN |
| | RICHARD M. EDMONSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 04/18/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/9/2002 |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. Bradley Reid (Bradley) appeals from the dismissal of his lawsuit against his insurer and its agent, on behalf of his minor son, Bradie Reid (Bradie). While the trial court dismissed the action on the merits, we conclude that the action is barred by the doctrine of res judicata. Accordingly, we affirm.

## **FACTS**

¶2. On June 16, 1995, Tawanatha Reid (Tawanatha) was in a car accident with her son Bradie. Bradie was in the front passenger seat, and when the car collided, the passenger side air bag deployed striking him in the face. As a result, he suffered massive facial edema causing the closing of his right eye and a fracture of the nasal cartilage area.

¶3. Earlier on May 9, 1994, Tawanatha and her husband, Bradley, applied for automobile insurance with American Premier Insurance Company (American Premier) through Ross-King-Walker, Inc. (Walker), an insurance agency. At the time, the Reids owned a 1991 Pontiac automobile which was insured by Principle Casualty Insurance Company providing for bodily injury liability limits in the amount of $10,000.00 per person and $20,000.00 per accident. The Reids leased a 1994 Nissan automobile which was insured by

Mutual Service Casualty Company (Mutual Service) with limits of liability for bodily injury in the amount of $100,000.00 per person and $300,000.00 per accident. The larger liability limits for the insurance covering the Nissan were required by the lease agreement for that vehicle. Neither policy provided for uninsured motorist coverage.

¶4. According to Tawanatha, she was seeking to lower the insurance premiums for the family automobile and intended to replace the two existing policies with a single automobile insurance policy covering both vehicles for a lower premium cost. American Premier contends that Tawanatha presented the declarations pages for the existing policies and told the Walker agent that she wanted the same coverage as reflected on the declarations page for the Mutual Service policy which described the 1994 Nissan vehicle. The agent at Walker quoted Tawanatha a premium price for a single policy covering both vehicles that included uninsured motorist coverage; and a premium price without uninsured motorist coverage. Tawanatha selected the insurance coverage applicable to the lower premium price. The application for insurance had a provision for "uninsured motorist coverage selection or rejection." Within the provision, underneath the applicant's signature appears "if two persons are named as applicants, both signatures are necessary" in parenthesis. Tawanatha, as she had previously done, signed the application rejecting the uninsured motorist coverage. In the uninsured motorist coverage section or rejection provision, Tawanatha signed as the person authorized to procure automobile liability insurance and select or reject uninsured motorist coverage. Her husband, the other applicant, was not present and did not sign the rejection. A policy was issued which was cheaper than the two previous policies combined.

¶5. Following Tawanatha's accident, she made demand upon American Premier requesting that the liability portion of the policy provide them coverage for her son's injuries. In response, American Premier claimed the liability portion of the policy did not apply because of an exclusion in the policy and asserted that there was no uninsured motorist coverage.[1]

¶6. As a result of the denial, Tawanatha filed an action in the Lawrence County Circuit Court. American Premier removed that action to the U.S. District Court for the Southern District of Mississippi and filed a motion to dismiss. In July 1997, American Premier filed a declaratory action requesting that the court find there was no liability coverage *and* no uninsured motorist coverage.

¶7. By memorandum opinion and order, dated December 1997, the district court granted American Premier's motion to dismiss, finding the exclusion provision in the policy valid. ***Reid v. American Premier Ins. Co.,*** Civil Action No. 2:97-CV-98-PG. The district court granted declaratory and summary judgment, in favor of American Premier in February, 1998, finding it had previously addressed the issue of whether the American Premier policy provides liability insurance covering the bodily injury claims of Bradie in its December 1997, opinion. However, it did not address the uninsured motorist issue. On appeal, the Fifth Circuit affirmed the district court's ruling, also without addressing the uninsured motorist issue. ***Reid v. American Premiere***, 159 F.3d 1355 (5th Cir. 1998).

¶8. Subsequently, Bradley filed this action against American Premier and its agent, Walker, in the Lawrence County Circuit Court asserting his son, Bradie, was entitled to benefits under the uninsured motorist provision of the policy. Bradley argued that since he did not reject uninsured motorist coverage, Bradie was entitled to the uninsured motorist provision. American Premier removed this cause to federal court asserting that Walker was fraudulently joined, that it had met the requirements for uninsured motorist coverage mandated by Miss. Code Ann. § 83-11-3 (1999), that this claim was a compulsory counterclaim which

should have been asserted in the prior declaratory action, and that it is, therefore, barred by res judicata. Walker argued Bradley had failed to state a claim for which relief could be granted. In a memorandum opinion, finding American Premier had failed to prove fraudulent joinder, the district court remanded the case to the circuit court. ***Reid v. American Premier Ins. Co.,*** Civil Action No. 2:97-CV-98-PG.

¶9. The circuit court allowed discovery to proceed. The record reflects that only the depositions of Bradley and Tawanatha were taken. In Tawanatha's deposition, she testified that she informed the agent that she wanted cheaper coverage because her current provider had gone up on its premiums. Tawanatha stated she was told by the agent that the policy would be cheaper without uninsured motorist coverage. She further testified that the agent never really explained uninsured motorist coverage to her. Tawanatha testified that she did not show the insurance policy to her husband. She told her husband that she took out the insurance policy and how much it cost. Bradley admitted that his wife handled their insurance.

¶10. Following discovery, the circuit court granted summary judgment. The trial court determined that Tawanatha rejected uninsured motorist coverage on behalf of her and her husband. The trial court further determined that the language on the application requiring two signatures was merely an instruction to the agent regarding internal procedures for filling out the application for insurance, rather than a legal requirement upon which the applicants could rely. Aggrieved, by the court's ruling, Bradley appeals on behalf of his minor son, Bradie.

## DISCUSSION

¶11. American Premier filed a supplemental motion to dismiss couched as a renewal of its motion to dismiss, despite the fact that discovery materials were relied upon. Walker also filed a supplemental motion to dismiss, termed as a motion to dismiss or in the alternative for summary judgment. A motion to dismiss raises issues of law. ***Sennett v. United States Fid. & Guar. Ins. Co.***, 757 So.2d 206, 209 (Miss. 2000). The trial court granted the two motions to dismiss. Here we treat the trial court's action granting the motion to dismiss as a grant of summary judgment. ***Jones v. Jackson Pub. Schs.,*** 760 So.2d 730, 731 (Miss. 2000); ***Walton v. Bourgeois***, 512 So.2d 698, 699-700 (Miss. 1987). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56 (c). On appeal, this Court reviews a motion for summary judgment de novo. ***Mosby v. Moore***, 716 So. 2d 551, 557 (Miss. 1998).

### I. Uninsured Motorist Coverage

¶12. The sole issue addressed by this Court is whether the trial court erred in granting American Premier's and Walker's motions to dismiss. In order to resolve this issue, it is important to understand its procedural history. In its request for declaratory relief in federal court in the previous proceeding, American Premier named, in addition to Tawanatha, Bradley and Bradie as defendants. In conjunction with its assertion that there was no liability coverage for the claims of Bradie, American Premier also asserted there was no uninsured motorist coverage for Bradie's injuries, pursuant to Miss. Code Ann. § 83-11-101 (1999). There is no indication that any response was made to this assertion.

¶13. The federal district court granted summary judgment in the declaratory action in favor of American Premier, and the Fifth Circuit affirmed. Neither court, however, addressed the uninsured motorist issue. The answer to the complaint for declaratory relief is not in the record before this Court, and the briefs do not

reveal whether the assertion regarding uninsured motorist coverage was contested. In fact, Bradley does not argue the issue of res judicata raised in the second action.

## II. Res Judicata

¶14. Two prior actions have been litigated by Bradley on behalf of Bradie against American Premier, namely his action which began in the circuit court and was thereafter removed to federal court and American Premier's original action for declaratory judgment in federal court. Both resulted in judgments for American Premier. Bradley could have asserted his uninsured motorist claim on behalf of Bradie in either of these actions, but did not pursue the claim.

¶15. The res judicata or claim preclusive effect of a judgment of a federal district court exercising its diversity of citizenship jurisdiction is normally determined under the law of the state in which the federal court sits. *Semtek Int'l Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 508-09, 121 S. Ct. 1021, 1028-29; 149 L. Ed. 2d 32 (2001). Thus, we apply Mississippi law here.

¶16. The rule of law known as res judicata provides that when a court of competent jurisdiction enters a final judgment on the merits of an action, the parties or their privies are precluded from relitigating claims that were decided or could have been raised in that action. *Walton v. Bourgeois*, 512 So.2d at 700. This Court has listed four identities that must be present before a subsequent action may be dismissed on the grounds of res judicata:

> (1) identity of the subject matter of the original action when compared with the action now sought to be precluded;

> (2) identity of underlying facts and circumstances upon which a claim is asserted and relief sought in the two actions;

> (3) identity of the parties to the two actions, an identity met where a party to the one action was in privity with a party to the other; and

> (4) identity of the quality or character of a person against whom the claim is made.

*Dunaway v. W. H. Hopper & Assocs.*, *Inc*., 422 So.2d 749, 751 (Miss. 1982).

¶17. Here three factors are clearly present, (1) the Reids were the defendants in the prior declaratory action; (2) Bradley was the plaintiff in his prior direct action; and (3) a final judgment was entered on the merits by the federal district court sitting in diversity jurisdiction. With regard to the fourth, the primary test for comparing causes of action is whether the primary right and duty or wrong are the same in each action. Because the Reids sought coverage for the injuries of their son in the prior proceedings, this factor is likewise satisfied as the uninsured motorist coverage claim arises under the same insurance policy and the same accident. *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1993)(en banc); *Smith v. Safeco Ins. Co.*, 863 F.2d 403 (5th Cir. 1989) (holding that plaintiffs' second action barred by res judicata where all the plaintiffs' claims sought coverage under a single insurance policy, for injuries resulting from one accident).

¶18. In *Smith v. Safeco Ins. Co.*, 863 F.2d 403 (5th Cir. 1989), the plaintiff first brought suit in district court for punitive damages under an insurance contract for the insurer's refusal to pay a claim under the

policy for medical expenses. The court ruled that res judicata barred the second suit in which the plaintiff sought to collect underinsured motorist benefits under the same insurance policy. The court held that all of Smith's claims against Safeco sought coverage under a single insurance policy for injuries resulting from one accident. These claims arose out of a common nucleus of operative fact and comprised a single transaction. Smith, it concluded, was required to bring all of his claims or causes of action against Safeco that arose out of the crash and so his second action was precluded.

¶19. This Court ruled similarly in *Aetna Cas. & Sur. Co. v. Berry*, 669 So.2d 56 (Miss. 1996), where we concluded that res judicata barred an insured's subsequent action raising the insurer's bad faith and agent's negligence and seeking medical payments where the insured could have raised bad faith, negligence and medical payments coverage in initial action in federal court against the insurer, agent, uninsured driver and others seeking uninsured motorist benefits and other relief.

¶20. Not only should Bradley have included the claim for Bradie under the uninsured motorist provision in his original suit, he should also have raised the uninsured motorist claim as a compulsory counterclaim in the prior declaratory action. A compulsory counterclaim is designated as "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the *transaction or occurrence* that is the subject matter of the opposing party's claim. . . . ." under both Mississippi and the Federal Rules of Civil Procedure Rule 13(a).

¶21. In *Fulgham v. Snell*, 548 So.2d 1320, 1321-22 (Miss. 1989), the sole issue before this Court was whether the trial court erred in dismissing the suit against Marcus Edward Skipper and Susan Skipper under M.R.C.P. 13(a). In the Skippers' motion to dismiss filed in trial court, they asserted that the action should be dismissed as a compulsory counterclaim which should have been stated in the prior action between the Skippers and Fulgham. The Skippers "contended that the counterclaim was compulsory because there was a logical relation between the claim and the counterclaim." *Id*. at 1322. In affirming the trial court's decision in *Fulgham*, this Court held that:

> In deciding whether or not the suit sub justice arose from the same transaction or occurrence on which the previous termination action was based, we consider the following tests:
>
> (1) whether the same evidence or witnesses are relevant to both claims;
>
> (2) whether the issues of law and fact in the counterclaim are largely the same as those in the plaintiff's claim;
>
> (3) whether, if the counterclaim were asserted in the later lawsuit, it would be barred by res judicata;
>
> (4) whether or not both claims are based on a "common nucleus of operative fact.

*Id*. at 1322-23. In applying the four-prong test stated in *Fulgham*, the logical relationship test is used to determine whether a claim and counterclaim arise from the same transaction or occurrence such that a counterclaim is compulsory; it exists when the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant. *See American Bankers Ins. Co. v. Alexander*, 2001WL 83952 (Miss. 2001).

¶22. In his response to American Premier's motion to dismiss in the circuit court, Bradley argued the uninsured motorist claim for Bradie was not barred by res judicata because there was no basis for the claim

until the district court determined that the liability portion of the policy in question did not apply, underscoring where Rule 13(a) requires that "a pleading shall state as a counterclaim any claim which at time of serving the pleader has against any opposing party," and asserting further that a claim must exist in order for it to be a compulsory counterclaim. He did not cite other authority, however, and does not pursue the argument on appeal.

¶23. The argument is without merit. This Court has determined when a claim is deemed denied for purposes of an uninsured motorist claim. *Aetna,* 669 So.2d 56. The statute defines an uninsured automobile as including an automobile as to which there was an applicable policy, but the insurance company writing the same "legally denied coverage thereunder" language. We have held that where the definition in the policy omitted the word "legally," the policy did not diminish the coverage required by statute, and thus it was necessary only to look to the terms of the policy. *Medders v. United States Fid. & Guar. Co.*, 623 So.2d 979, 985 (Miss. 1993).

¶24. The policy here provides that an uninsured motor vehicle includes that vehicle "to which a bodily injury or property damage liability bond or insurance policy applies at the time of the accident, but the bonding or insurance companies *denies coverage* or is or becomes insolvent within one year after the accident." Clearly, the insurance company here, American Premier, had denied liability coverage prior to Bradley's original action. The policy's definition does not indicate as Bradley suggests that he had to wait for the liability coverage claim to be adjudicated before raising his uninsured motorist claim.

¶25. The parties are identical, final judgment on the merits was rendered by a court of competent jurisdiction, and the claim, arising out of a common nucleus of operative fact, is barred by res judicata. Moreover, though the issues of law and fact are different from those in the previous claim, the same evidence or witnesses are relevant. *See City of Oxford v. Spears*, 228 Miss. 433, 87 So.2d 914 (1956); *Dewees v. Dewees,* 55 Miss. 315 (1877). Bradley should have raised the uninsured motorist counterclaim in the previous actions.

### III. Ross-King-Walker

¶26. Bradley makes no argument in support of liability of Walker in his brief. He does not even discuss it. The Court is, therefore, not required to consider it. *Brown v. Houston Sch. Dist*., 704 So.2d 1325, 1327 (Miss. 1997). We decline to do so.

### CONCLUSION

¶27. For these reasons, the judgment of the circuit court dismissing this action is affirmed.

¶28. **AFFIRMED.**

**SMITH, P.J., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. PITTMAN, C.J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶29. Because there is sufficient evidence creating a jury issue as to whether the insurance agency committed an independent tort and because the doctrines of res judicata and collateral estoppel do not apply here, I

dissent. Bradie Reid, the minor child, through his legal guardian and father, Bradley Reid, brought this action against Ross-King-Walker and American Premier. Ross-King-Walker was not a party to either of the other actions stemming from the June 16, 1995, accident in which Bradie was injured. American Premier and Ross-King-Walker removed the instant case to federal court alleging fraudulent joinder of Ross-King-Walker by Reid as a means to defeat federal court diversity of citizenship jurisdiction. In remanding this case to state court, United States District Judge Charles W. Pickering, Sr. rendered his analysis succinctly when he said that fraudulent joinder must be shown by clear and convincing evidence, the best illustration of which would be to show that there was no independent tort of the part of Ross-King-Walker.

¶30. I would find that there is sufficient evidence creating a jury issue of whether an independent tort was committed by Ross-King-Walker. In *Aetna Cas. & Sur. Co. v. Berry,* 669 So.2d 56, 76 (Miss. 1996), we held:

> that in order for an insured to have an option to increase UM limits not to exceed the limits of the policy, *or for the insured to completely reject UM coverage in writing*, an insurance agent has a duty to explain UM coverage. . . . An agent is not necessarily under a duty to *recommend* that the insured exercise the option of obtaining UM coverage up to the limits of the policy; however, before an insured may make an intelligent decision about how much UM coverage he wants, or make a knowing waiver of UM coverage in writing (which the agent must obtain if there is to be no UM coverage under the policy), he must understand what he is entitled to.

*Id.* (emphasis added). If the agent fails to uphold this duty to explain, and as a result is found to be negligent, damages may be awarded. *Id.* at 76.

¶31. The majority wrongfully concludes that res judicata and collateral estoppel are applicable to Ross-King-Walker as an independent tort has been alleged. Additionally, the federal court found there to be a chance that Bradie, the minor, still has a viable cause of action as a result of the insurance agent's failure to explain the ramifications of foregoing uninsured motorist coverage to both of the designated insureds, namely, Bradley, the father, and also the agent's negligence in not requiring that both insureds sign the policy relinquishing said uninsured motorist coverage.

¶32. For res judicata to apply, four factors must be present:

> 1) identity of the subject matter of the original action when compared with the action now sought to be precluded;

> 2) identity of the underlying facts and circumstances upon which a claim is asserted and relief sought in the two actions;

> 3) identity of the parties to the two actions, an identity met where a party to the one action was in privity with a party to the other; and

> 4) identity of the quality or character of a person against whom the claim is made.

*Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So.2d 749, 751 (Miss. 1982). The majority concedes that only three of these factors are present. In the case sub judice, collateral estoppel does not apply either as the issue of uninsured motorist coverage was not breached and also because Ross-King-Walker was not a party to the prior federal court proceedings.

¶33. The issue of uninsured motorist coverage remains, as does the negligence of the agent in not explaining the policy to Mrs. ***and*** Mr. Reid. These are questions of fact that, for the following reasons, Judge Pickering believed should be addressed on remand:

> The Court, after reviewing the policy, cannot say that there is no possibility that the rejection of uninsured motorist coverage by only one of the insureds - in a situation in which there are two insureds - prevents there being uninsured motorist coverage. The general rule in Mississippi is that uninsured motorist policies are to be construed liberally in favor of providing coverage. Due to the tendency of the Mississippi Supreme Court to construe uninsured motorist coverage liberally to provide coverage, section 83-11-101's language indicating that 'the coverage herein shall not be applicable where <u>any insured</u> named in the policy shall reject coverage in writing' is possibly subject to differing interpretations. Miss. Code Ann. § 83-11-101 (1991) (emphasis added). Does such wording mean that there is no uninsured motorist coverage for the policy in its entirety if a specific insured rejects coverage, or does it mean that there is no uninsured motorist coverage for the specific insured who rejects coverage? A literal construction of the statute may well reject coverage for all insureds if a specific insured rejects coverage, but if construed broadly, coverage may be provided if only one of two insureds rejects coverage.

> Furthermore, there is nothing that prohibits an insurance company from making its coverage and procedures more favorable to an insured than stat law requires; and in cases involving ambiguities, insurance policies must be construed against the insurance company who wrote the policy. Consequently, it is difficult to say whether the language at the bottom of the policy, which states that '[i]f two persons are named as applicants both signatures are necessary,' is an expansion of the insureds' rights or whether the signature of one of two insureds legally rejects uninsured motorist coverage for the entire policy.

> In sum, this case abounds with ambiguities - both factual and legal. Resolution of these issues should be the responsibility of the state courts. This Court's responsibility, at this time, is limited to simply deciding whether the removing party has demonstrated 'that there is <u>absolutely no possibility</u> that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.' <u>Cavallini</u>, 44 F.3d at 259. (emphasis added). In light of the above and after a thorough review of the record, the Court cannot say that there is <u>no possibility</u> that Plaintiff can recover under the duty outlined in <u>Berry</u>. The removing party has not met its burden of proof. Accordingly, Plaintiff's Motion to Remand should be granted.

R. Vol. 1, 149-50.

¶34. For these reasons, I disagree with the majority and maintain that the circuit court's judgment should be reversed and that this case should be remanded for trial.

1. The policy exclusion for liability coverage excludes liability coverage for bodily injury to the named insureds or to any family member of the named insured residing in the same household.