# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01196-SCT

*HENRY PUNZO*

*v.*

*JACKSON COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/29/2002 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RUSSELL S. GILL |
| | BRADLEY WADE RATH |
| ATTORNEY FOR APPELLEE: | GARY S. EVANS |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED-12/04/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    This case, arising from property damage, arises under the Mississippi Tort Claims Act

(MTCA), Miss. Code Ann. § § 11-46-1 to -23 (Rev. 2002 & Supp. 2003).  The landowner

seeks an award of monetary damages and a mandatory injunction against a county.  The issues

before us are whether the trial court erred in granting summary judgment, finding the claim to

be time barred as to money damages, and whether the trial court erred in refusing to grant a

mandatory injunction.  We find the trial court's summary judgment dismissing the money

damage claims was not proper because the discovery of a latent injury rule applied to toll the

statute of limitations.  On the issues concerning injunctive relief, we find the trial court erred

in not applying the current legal standard for mandatory injunctions. Therefore, we reverse and remand.

**FACTS**

¶2.    Since 1986, Henry Punzo (Punzo) has resided at 15600 Green Thumb Drive in Jackson County, Mississippi; his home was built at approximately eighteen feet above sea level. On Punzo's property is a creek which crosses about three acres of the property. Approximately three-fourths of a mile to one mile from Punzo's home downstream is the Daisy Vestry Road two-lane bridge (bridge), spanning the creek with a steep approach on each side. This low area serves as a relief mechanism for the watershed upstream of the bridge.

¶3.    In late 1991 or early 1992, the Jackson County Road Department filled in the north approach to the bridge. This operation encompassed a length of about four hundred fifty feet to an average height of about two feet. The fill was calculated to have provided an extra two thousand seven hundred cubic feet per second of water flow capacity to the flow allowed by the bridge.

¶4.    Sometime after the approach was raised or filled, Jackson County added two polyethylene culverts immediately north of the bridge. These culverts were calculated to have about one hundred sixty cubic feet per second of water flow capacity. This is about six percent of the approach's capacity prior to the fill.

¶5.    On May 5, 1995, Punzo's home flooded for the first time. On March 7, 1998, the house flooded a second time. Punzo's house flooded three more times on September 12, 1998, September 27, 1998, and June 11, 2001. The home flooded at least once more since

2

the trial of this matter. As a result of the floods, Punzo has incurred approximately $129,973.98 in damages to date.

¶6. The following tropical storms and/or hurricanes coincided with episodes of flooding: September 12, 1998, was Tropical Storm Frances with a total of 8.07 inches of rainfall, September 27, 1998, was Hurricane Georges with 15.67 inches of rainfall, and June 11, 2001, was Tropical Storm Allison with 9.90 inches of rainfall.

¶7. On September 9, 1999, Henry Punzo presented a notice of claim to the Jackson County Board of Supervisors (Board), pursuant to the MTCA. On December 8, 1999, Punzo filed a complaint against Jackson County, Mississippi (County) in the Circuit Court of Jackson County. The lawsuit sought a claim for money damages and a mandatory injunction.

¶8. After the County filed a motion to dismiss or in the alternative, for summary judgment, Punzo filed an amended complaint. The trial court disposed of the claim for money damages under the MTCA by partial summary judgment on January 11, 2002, finding the claim was barred by the one-year statute of limitations. The court held that the statute began to run at the time of the alleged wrongful conduct the raising of the road on the north side of the bridge. Punzo claimed the discovery of a latent injury rule applied, tolling the statute of limitations until his discovery of the alterations to the bridge in 1998.

¶9. After a full trial on the merits concerning the remainder of Punzo's complaint, the trial court denied Punzo's request for a mandatory permanent injunction. The trial court found that Punzo did not prove beyond a reasonable doubt that he was entitled to a mandatory injunction and that Punzo did not show that an injunction is the only effective remedy. The trial court

issued final judgment on July 2, 2002. Punzo appealed to this Court the trial court's partial summary judgment and denial of mandatory injunctive relief.

## STANDARD OF REVIEW

¶10. The County filed a motion to dismiss, or in the alternative for summary judgment. This Court has said before a motion to dismiss raises issues of law. *Reid v. Am. Premier Ins. Co.*, 814 So. 2d 141, 144 (Miss. 2002) (citing *Sennett v. United States Fid. & Guar. Co.*, 757 So. 2d 206, 209 (Miss. 2000)). This Court reviews de novo a grant of summary judgment. *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 70 (Miss. 1996). Only if the plaintiff is unable to prove any facts to support his claim will summary judgment be granted. *Smith v. Braden*, 765 So. 2d 546, 549 (Miss. 2000) (citing *Delahoussaye v. Mary Mahoney's, Inc.*, 696 So. 2d 689, 690 (Miss. 1997)). In order for this Court to reverse a summary judgment, there must exist a triable issue of fact after the facts are viewed in the light most favorable to the nonmoving party. *Robinson v. Singing River Hosp. Sys.*, 732 So. 2d 204, 207 (Miss. 1999) (citing *Box v. State Farm Mut. Auto Ins. Co.*, 692 So. 2d 54, 56 (Miss. 1997)).

¶11. Additionally, on appeal is the trial court's judgment denying injunctive relief. The review of a trial judge's findings of fact and law requires a finding that the trial court was manifestly wrong before this Court will disturb its ruling. *USPCI of Miss., Inc. v. State ex rel. McGowan*, 688 So.2d 783, 786 (Miss. 1997) (citing *RC Constr. Co., Inc. v. Nat'l Office Sys., Inc.*, 622 So.2d 1253, 1255 (Miss. 1993)).

## LAW AND ANALYSIS

¶12.	There are four issues on appeal. The first concerns the order dismissing the claims as to money damages; the order is styled as one granting summary judgment as to the money damages. The remaining three concern the final judgment denying a mandatory injunction, and these three will be addressed together.

> **I.	WHETHER THE TRIAL COURT ERRED IN GRANTING THE COUNTY'S MOTION FOR SUMMARY JUDGMENT AS TO PUNZO'S CLAIM FOR MONEY DAMAGES.**

¶13.	The trial court's basis for dismissing the money claims by partial summary judgment was that the claim was time barred by the statute of limitations provision that applies to government entities:

> All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days from the date the chief executive officer of the state agency receives the notice of claim, or for one hundred twenty (120) days from the date the chief executive officer or other statutorily designated official of a municipality, county or other political subdivision receives the notice of claim, during which time no action may be maintained by the claimant unless the claimant has received a notice of denial of claim.

Miss. Code Ann. § 11-46-11-(3). The County claims that the discovery rule does not apply to toll the statute. Punzo claims the discovery rule does apply.

¶14.	Punzo argues that if the one-year statute of limitations in § 11-46-11(3) applies, then his claim was promptly filed since he filed his complaint within one year of his discovery of the County's negligent rebuilding of the bridge. *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199, 204 (Miss. 1999). Punzo asserts that he had no way of knowing that the County was liable until September 12, 1998, when his neighbor, Mark Holland, and former Jackson County

5

supervisor Tommy Brodnax advised him of the modification to the bridge. As a result, he maintains that his notice to the County, filed on September 9, 1999, was timely filed within one year of his discovery of the County's negligent conduct. His complaint filed on December 8, 1999, was also timely filed.

¶15. The County argues that the statutory language used, "the tortious, wrongful or otherwise actionable conduct," requires the statute to run from the date the bridge construction was completed, which would have been late 1991 or early 1992. The County also argues that for the discovery rule to apply, there must be a latent injury. Looking at the flood as the injury, the County states there is nothing latent, or concealed, about floodwaters in a house. Punzo contends that this Court should look to the discovery of the cause of the injury in this instance, not the date, because the cause was not readily apparent or obvious. The trial court held that Punzo's injury was "immediate rather than latent," explaining, "[t]he cause of the injury may have been unknown at the time, but [Punzo] certainly knew that he had been injured in May of 1995."

¶16. The trial court's findings are not consistent with this Court's prior holdings as in *Barnes*, 733 So. 2d 199, and *Sweeney v. Preston*, 642 So.2d 332 (Miss. 1994). In *Barnes*, this Court repeated *Sweeney*'s summary of the rationale supporting the application of the discovery rule to latent injury cases:

> Thus, where an injury or disease is latent, a determination of when the statute of limitation begins to run focuses not on the time of the negligent act or omission, but on when the plaintiff discovers the injury or disease. Moreover, knowledge that there exists a casual relationship between the negligent act and the injury or disease complained of is essential because "it is well-established that prescription does not run against one who has neither actual nor constructive notice of facts that would entitle him to bring an action."

6

733 So. 2d at 204 (quoting *Sweeney*, 642 So.2d at 334 (quoting *Williams v. Kilgore*, 618 So.2d 51, 55 (Miss. 1992)))." Also, *Sweeney* references *Gentry v. Wallace*, 606 So. 2d 1117 (Miss. 1992), in which this Court held that wrongful death and medical negligence were two separate causes of action, following the logic that "[p]rescription does not begin to run against one who is ignorant of facts that would entitle him to bring an action." *Sweeney*, 642 So. 2d at 335 (quoting *Ayo v. Johns-Manville Sales Corp.*, 771 F.2d 902 (5th Cir. 1985)).  ¶17.

The County concedes that in *Barnes*, this Court held that the absence of specific discovery language in § 11-46-11(3) did not preclude the application of the discovery rule; however, the County argues that the injury to Punzo's property was not latent.  733 So. 2d at 204.  Further discussion in *Sweeney* examined the  history of discovery rule application in medical malpractice actions involving latent injuries. Prior to the enactment of § 15-1-36 and the three-year statute of limitations with a discovery rule provision for latent injuries, the six-year general statute of limitations applied to medical malpractice claims without a discovery rule provision. *Barnes*, 733 So. 2d at 204  (citing *Sweeney*, 642 So.2d at 333).  By adopting § 15-1-36,

> the Legislature shortened the time period for bringing a medical malpractice suit, but adopted a discovery standard for triggering the running of the statute. … Similarly, when the Legislature amended § 15-1-49 (the general statute of limitations), shortening the limitations period from six years to three years, it included a discovery provision for latent injuries as a trade-off.

733 So. 2d at 204. *Barnes* clearly decided that where the one-year statute of limitations applied, the claim was filed properly when it was filed within one year of the discovery of the defendant's negligent conduct.  *Id*.  In *Barnes,* 733 So. 2d at 205, this Court thoroughly

described the history of the discovery rule at common law and its application to a variety of case types, reviewing cases such as *Schiro v. Am.Tobacco Co.*, 611 So.2d 962, 965 (Miss. 1992) (discovery rule as a common law exception), *Owens-Ill., Inc. v. Edwards*, 573 So.2d 704 (Miss. 1990) (discovery rule exists in case of negligence or products liability cause of action involving latent disease), *Evans v. Boyle Flying Serv., Inc.*, 680 So.2d 821 (Miss. 1996) (holding that a notice of claim period did not begin to run until discovery of the injury), *Smith v. Sneed*, 638 So.2d 1252 (Miss. 1994) (discovery rule applied in legal malpractice actions), *Tabor Motor Co. v. Garrard*, 233 So.2d 811, 814 (Miss. 1970) (discovery rule in statutes of limitations applied to workers' compensation case), and *Staheli v. Smith*, 548 So.2d 1299 (Miss. 1989) (statute of limitations in suit for defamatory material does not begin to run until reasonable discovery of the material). Remaining consistent with the above cases, this Court incorporated a discovery rule in actions brought under the MTCA involving latent injuries. *Barnes*, 733 So. 2d at 205.

¶18.	In *Smith v. Braden*, 765 So. 2d 546, this Court reiterated its earlier holding in *Barnes* incorporating the discovery rule into actions brought under the MTCA. Given the relatively short one-year statute of limitations, it is particularly important. *Id*. When a question of fact exists as to when the statute of limitations begins run, the issue should be considered by the trial court. *Id*. (citing *Barnes*, 733 So. 2d at 203-06.)

¶19.	In *Evans*, 680 So. 2d at 827, this Court held it was not reasonable to bar a person's cause of action when that person initially had no knowledge that time was running on the statute. The *Evans* court found it to be an injustice to prevent a person's recovery "on a

8

claim, i.e. an injury for which redress is guaranteed by our Constitution and statutory law, by being barred by a limitation period, in actuality a statute of repose if it were so construed, when they should not have reasonably known that damage had occurred." The *Evans* holding is similar to and consistent with this Court's earlier statement in *Smith v. Sanders*, 485 So.2d 1051, 1052-53 (Miss. 1986):

> There may be rare cases where the patient is aware of his injury prior to the [expiration of the limitations period], but does not discover and could not have discovered with reasonable diligence the act or omission which caused the injury. In such cases, the action does not accrue until the latter discovery is made.

¶20.    The County also contends that if the injury was latent, Punzo did not use the required reasonable diligence to determine the cause of the flood because three years passed between the first flood and the time Punzo learned from a neighbor of the bridge's alterations. This Court maintains that one flood does not create enough notice of an actionable claim's existence or of someone's fault. The second flood was just six months before Punzo's third flood and his learning of the bridge alterations. The record indicates that Punzo had completed the clean up and repair of his house from the damage of the second flood in March of 1998 just a month or so prior to the third flood in September of 1998. Within six months of that flood he learned of the alleged cause. We find that six months is a reasonable time period to discover the alleged cause of the harm.

¶21.    Within one year of his discovery of the potential cause of the floods, he instigated proceedings against the County in compliance with § 11-46-11. Additionally, Punzo testified that he had written letters to the County's attorney as early as February 1999, asking for help

9

with the flooding conditions. In *Sarris v. Smith*, 782 So. 2d 721, 724 (Miss. 2001), this Court examined the application of the discovery rule to a wrongful death suit, stating:

> *Sweeney* stands squarely for the proposition that the statute of limitations can be tolled until a plaintiff gains actual knowledge of the defendant's negligent conduct even if that knowledge is not gained until years after the death that is the basis for the suit. . . . The discovery rule should have been applied to toll the statute of limitations, because while Sarris knew that her husband was dead, under the facts of this case, she could not reasonably have known that the death was the result of negligence.

We have recognized that some instances of discovery require knowledge beyond that of a layman. Water flow and flood currents are subjects requiring expert knowledge to fully comprehend. In *Donald v. Amoco Production Co.*, 735 So. 2d 161, 168 (Miss. 1999), we examined the proposition that a layperson may have limited knowledge, stating, "the discovery exception may be applied when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." (citing *Smith*, 638 So. 2d at 1257).

¶22.    In granting summary judgment dismissing the money damages claims, the trial court stated that the injury to Punzo was "immediate rather than latent," so the discovery rule would not apply; however, the court did not hold a hearing before making that finding of fact . According to *Schiro*, genuine disputes as to the ability to discover a latent injury are questions of fact to be decided by the fact finder, not on summary judgment. 611 So. 2d at 962.

¶23.    In another property damage case, this Court found that when a plaintiff missed the three-year limitation period by less than two years, then the claim could not be considered "stale," especially since all witnesses were most likely still alive and still had fresh memories. *Barnes*, 733 So. 2d at 167. The situation is similar in Punzo's case because the witnesses

10

testified at trial in the injunction phase of the case and appeared to have impaired memory due to the passage of time.

¶24. We find the trial court erred in dismissing the money damages portion of Punzo's complaint as time barred. We reverse and remand the matter for a full trial on the merits.

> **II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT PUNZO FAILED TO PROVE THAT AN INJUNCTION WAS THE ONLY EFFECTIVE REMEDY TO SOLVE PUNZO'S FLOODING PROBLEMS.**
>
> **III. WHETHER THE TRIAL COURT ERRED IN FINDING THAT PUNZO DID NOT SHOW BEYOND A REASONABLE DOUBT THAT THE RIGHT TO A MANDATORY INJUNCTION WAS NECESSARY AND THAT IRREPARABLE INJURY WOULD RESULT UNLESS THE MANDATORY INJUNCTION WAS ISSUED.**
>
> **IV. WHETHER THE TRIAL COURT ERRED IN DENYING PUNZO'S REQUEST FOR A MANDATORY PERMANENT INJUNCTION.**

¶25. This Court will not disturb a judge's findings of fact unless they are manifestly wrong. *USPCI of Miss., Inc.*, 688 So.2d at 786 (citing *RC Constr. Co.*, 622 So.2d at 1255). The trial court made detailed findings of fact after a trial on the merits and concluded that Punzo did not sustain the burden of proof required to justify the court's establishment of a mandatory injunction against the County. However, the trial court did not rely on recent case law handed down by this Court on the subject of mandatory injunctions.

¶26. The trial court cites accurately to three cases, dating 1934, 1971, and 1978. The main case relied on by the trial court appears to be *Thomas v. Miss. Power & Light Co.*, 170 Miss, 811, 152 So. 269, 271 (1934), in which we held

> Nothing is better settled in this state, and nothing is or ought to be better understood, than the rule that a mandatory injunction should never issue unless

11

the right to it is so clearly and certainly shown that there can be no reasonable doubt of its propriety, no probability that the defendant can make any valid objection to it and no possibility that its justice can be controverted.

This standard requires more of a showing by the plaintiff than is required by the standard followed in more recent cases. In *Reynolds v. Amerada Hess Corp.*, 778 So. 2d 759, 765 (Miss. 2000), we stated, "To obtain a permanent injunction, a party must show an imminent threat of irreparable harm for which there is no adequate remedy at law." (citing *City of Water Valley v. Trusty*, 343 So. 2d 471, 472 (Miss. 1977)). In *Reynolds*, this Court made no mention of a requirement of proof beyond a reasonable doubt, which the trial court stated is the proof required.

¶27.    In *Hall v. Wood*, 443 So. 2d 834, 841(Miss. 1983), though this Court suggested use of extreme caution in granting a mandatory injunction, we did not require a showing of proof beyond a reasonable doubt. We stated, "A mandatory injunction should be ordered where such is 'the only effective remedy.'" *Id*. (quoting *Warrior, Inc. v. Easterly*, 360 So.2d 700, 704 (Miss.1978); citing *Homes, Inc. v. Anderson*, 235 So.2d 680, 683 (Miss.1970)). For further clarification, we explained,

> Mandatory injunctions should be granted only where that which they demand is reasonably practicable. A mandatory injunction requiring "a practical impossibility" should never issue. *Homes, Inc. v. Anderson*, 235 So.2d 680, 683 (Miss.1970). The expense and hardship to the party enjoined should also be considered. That these may be substantial counsels caution and restraint.

*Hall*, 443 So. 2d at 841. This decision does require that the remedy be practicable.

¶28.    In *Pattillo v. Bridges*, 247 So. 2d 811 (Miss. 1971), this Court did cite *Thomas* but not to the requirement of proof beyond a reasonable doubt. *Pattillo* declared,

12

*Thomas v. Miss. Power & Light Co.*, 1934, 170 Miss. 811, 152 So. 269; *Miss. Power & Light Co. v. McCoglan Hotel*, Miss.1934, 152 So. 271, 28 Am.Jur., Secs. 17-22, states that a mandatory injunction is a rather harsh remedial process and is not favored by the courts. It is not regarded with judicial favor and is used only with caution and in cases of great necessity. The case must be one clearly disclosing irreparable injury to the complainant. (233 Miss. at 176, 101 So.2d at 506).

247 So.2d at 812.

¶29.　The trial court erred in not applying the correct legal standard. We reverse and remand this case with instructions to the trial court to apply the legal standard as stated in *Reynolds*, requiring the requesting party to show an imminent threat of irreparable harm for which there is no adequate remedy at law, and in keeping with *Homes, Inc.*, a mandatory injunction should be granted only if reasonably practicable.

## CONCLUSION

¶30.　We find the trial court erred in dismissing the money damage claims because the discovery of a latent injury rule applied to toll the statute of limitations. On the issues concerning injunctive relief, we find the trial court erred in not applying the current legal standard for mandatory injunctions. Therefore, we reverse the circuit court's judgment, and we remand this case for further proceedings consistent with this opinion.

¶31.　**REVERSED AND REMANDED.**

　　　**McRAE, P.J., WALLER, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. PITTMAN, C.J., CONCURS IN RESULT ONLY. COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**


　　　**COBB, JUSTICE, DISSENTING:**

¶32. In my view, the majority errs on two issues. First, the majority expands and improperly applies the discovery rule in this MTCA case. Even if the set of facts and circumstances before us warrant application of the discovery rule, the point in time which the majority finds to be the proper date from which to calculate the running of the statute of limitations is illogical on its face. Second, although I agree with the majority's conclusion that the circuit court applied the incorrect standard as to Punzo's injunction claim, in my view it was harmless error. For the reasons set forth below, I respectfully dissent.

## I. The Discovery Rule Issue

¶33. In 1986, Punzo built a house approximately one mile from a bridge. In 1991, Jackson County modified that bridge, so that the new approach was higher than the old bridge approach. In 1993, the county placed two culverts in the bridge's approach to prevent flooding. In 1995, Punzo's house flooded for the first time. On March 7, 1998, Punzo's house flooded for the second time. On September 12, 1998, during a tropical storm, Punzo's house flooded for the third time. Also, on this date, Punzo's neighbor told him the county had modified the bridge. On September 27, 1998, during a hurricane, Punzo's house flooded for the fourth time. Finally, on September 9, 1999, 8 years after the county modified the bridge, **4 years after his house flooded for the first time, and 1½ years after his house flooded for the second time**, Punzo notified the county of his claim that the new bridge caused his flooding. On June 11, 2001, during a tropical storm, Punzo's house flooded for the fifth time.

¶34. A plaintiff must bring his claim against a county "within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after." Miss. Code Ann. § 11-46-11(3) (Rev. 2002). "Generally, mere

14

ignorance of the existence of a cause of action . . . does not prevent the running of the statute of limitations." 54 C.J.S. *Limitations of Actions* § 87 (1987). However, in special circumstances, the "discovery rule" tolls the statute of limitations until the plaintiff knows or reasonably should know of his claim. ***Boyles v. Schlumberger Tech. Corp.***, 832 So.2d 503, 506 (Miss. 2002). "Application of the discovery rule is a fact-intensive process." ***Sarris v. Smith,*** 782 So.2d 721, 725 (Miss. 2001).

¶35.    In my view, the discovery rule does not apply under the law and facts in this case. This Court does not generally apply the "discovery rule" in property damage actions. For example, in ***McCain v. Memphis Hardwood Flooring Co.***,725 So.2d 788, 789 (Miss. 1998), a corporation cut an individual's timber without his consent. The individual did not realize his timber had been cut until a few years later. ***Id.*** at 795. The individual urged this Court to apply the discovery rule and toll the statute of limitations so that he could bring his claim. ***Id.*** at 794. This Court refused to apply the discovery rule, stating:

> This Court has applied the discovery rule where the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question. Or . . . the discovery rule may be applied when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act. An owner of trees requires no unique expertise to realize when his trees have been taken without his permission. Neither is the taking of such trees without consent of an owner a secretive or inherently undiscoverable act which justifies the discovery rule. Thus, the application of a judge-made discovery rule would be inappropriate in the instant case.

***Id***.

¶36.    This case is similar to *McCain.* First, both *McCain* and this case involve damage to property; *McCain* involved timber cutting and this case involves house flooding. Second, both

15

*McCain* and this case involve a one-year statute of limitations; *McCain* involved Miss. Code Ann. § 15-1-33, and this case involves Miss. Code Ann. § 11-46-11(3). Third, neither *McCain* nor this case involve concealed injuries; timber cutting and house flooding are readily visible. Finally, neither *McCain* nor this case involve the need for specialized knowledge to perceive the injury; a layman can deduce that timber once present is now gone and that a house previously dry is now flooded. Therefore, as in *McCain,* the discovery rule should not apply.

¶37.    To claim benefit of the discovery rule, a plaintiff must be reasonably diligent in investigating the circumstances surrounding the injury. The focus is upon the time that a person discovers, or should have discovered by the exercise of reasonable diligence, that he probably has an actionable injury. *Smith v. Sanders*, 485 So.2d 1051 (Miss. 1986). There is no indication that Punzo took any investigative action whatsoever, and his discovery that there may have been an actionable injury was the result of a conversation with his neighbor. The intent of the discovery rule is to protect potential plaintiffs who cannot, through reasonable diligence, discover injuries done to them. In this case, the injury, flooding, was quite apparent, and there is no indication Punzo used reasonable diligence to investigate the flooding.

¶38.    This Court should not apply the discovery rule in actions where the plaintiff does not investigate his claim until a third-person notifies him of his claim. However, assuming for the sake of argument that the discovery rule does apply, Punzo reasonably should have discovered his claim no later than the time of the second flood, months before his neighbor notified him of a possible claim.

## II. The Injunction Issue

16

¶39.    The majority holds that the circuit court applied the incorrect injunction standard and reverses and remands with instructions as to Punzo's injunction claim.  I agree that the circuit court applied the incorrect legal standard.  However, I believe the circuit court's error was harmless error in this case.

¶40.    The circuit court found that Punzo's house had flooded five times since the county modified the bridge; however, the circuit court also found that Punzo's expert testified that the modified bridge had sufficient flow for a 100-year storm; that the flooding was probably caused by the intersection of two rivers further downstream and/or another bridge; and that "even if the bridge was extended and the fill removed, under similar weather conditions, Punzo's land may well flood again."  Also, the circuit court found that the new bridge was safer for vehicles than the old bridge.

¶41.    This Court reviews a circuit court's decision to deny an injunction for abuse of discretion — that is, we defer to the circuit court's decision and will not reverse the decision unless it was unreasonable and unduly prejudicial.  *Electronic Data Sys. Corp. v. Mississippi Div. Medicaid*, 853 So.2d 1192, 1208 (Miss. 2003).

¶42.    A circuit court should issue an injunction if the plaintiff proves by a preponderance of the evidence that:

> (1)    the plaintiff will be irreparably harmed if the injunction does not issue;
> (2)    the plaintiff's harm outweighs the defendant's harm if the injunction does issue;
> (3)    the public interest, i.e. the rights of third persons will be served by the injunction; and
> (4)    the plaintiff is likely to prevail on the merits.

*Electronic Data Sys. Corp*, 853 So.2d at 1207-08; *State v. Myers*, 244 Miss. 778, 146 So.2d 334 (1962).

¶43.   In this case, the circuit court's application of a "beyond a reasonable doubt" standard, while incorrect, is harmless because Punzo did not even prove by a preponderance of the evidence that he would be irreparably harmed if the injunction did not issue.  Punzo's own expert testified that even if the bridge was extended and the fill removed, under similar weather conditions, Punzo's land may well flood again.  Further, Punzo did not prove that the public interest would be served by the injunction: to the contrary, there was testimony that the new bridge is safer for vehicles than the old bridge.  Finally, Punzo did not show that he would likely prevail on the merits; in fact, the circuit court found that Punzo's tort claim was barred by the statute of limitations.  Therefore, it was not reversible error for the circuit court to deny Punzo's request for an injunction.

¶44.   Because I would affirm the circuit court's grant of summary judgment, I respectfully dissent.